

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-01020-CV

**IN THE INTEREST OF N.L.R.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-01716
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Beth Watkins, Justice

Delivered and Filed: March 20, 2024

AFFIRMED

Appellant R.R. appeals the trial court's order terminating his parental rights to his child,
N.L.R. (born 2022).[1] R.R. argues the evidence is legally and factually insufficient to support the
trial court's finding that termination is in the child's best interest. We affirm the trial court's order.

### BACKGROUND

In October of 2022, the Texas Department of Family and Protective Services removed
N.L.R. from the hospital where she was born because she tested positive for drugs at birth. N.L.R.'s
mother, V.A.R., admitted to using drugs during her pregnancy.

---

[1] To protect the privacy of the minor child, we use initials to refer to the child and her biological parents. TEX. FAM.
CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

The Department obtained temporary managing conservatorship over N.L.R., placed her with a maternal aunt and later moved her to a non-relative foster care, and filed a petition to terminate the parental rights of V.A.R. and R.R. The Department also created a family service plan requiring R.R. to, inter alia, provide proof of employment and safe housing, engage in a substance abuse assessment and follow all recommendations of the assessment, submit to random drug testing, and successfully enroll and engage in parenting classes as a condition of reunification. The Department ultimately pursued termination of V.A.R.'s and R.R.'s parental rights.

Twelve months after removal, the trial court held a one-day bench trial at which R.R. appeared. The trial court heard testimony from four witnesses: (1) V.A.R.; (2) R.R.; (3) the Department's caseworker, Jennifer Henry; and (4) Janelle Jaworski, a medical doctor who reviewed drug test results. At the conclusion of trial, the court signed an order terminating R.R.'s parental rights pursuant to section 161.001(b)(1)(N), (O), and (P) and its finding that termination of R.R.'s parental rights was in the best interest of the child. R.R. appealed.[2]

## ANALYSIS

R.R. challenges only the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of N.L.R. He does not challenge the sufficiency of the evidence to support the trial court's predicate findings under Texas Family Code section 161.001(b)(1)(N), (O), and (P). Accordingly, we must accept those unchallenged findings as true. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied).

---

[2] The trial court also terminated V.A.R.'s parental rights. She is not a party to this appeal.

***Standard of Review***

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *Id.* at 683 (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate R.R.'s parental rights and that termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. A factual sufficiency review requires us to consider the entire record to determine whether the evidence that is contrary to a finding would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *See id.* The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346. This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be

apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

### *Best Interest*

#### *Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In analyzing these factors, the court focuses on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Furthermore, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, we presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

*Application*

R.R. admitted using methamphetamine.[5] Department caseworker Henry described R.R.'s substance abuse as the most important issue he needed to address during this case. Illegal drug use is relevant to multiple best interest considerations, both statutory and *Holley* factors, including a child's emotional and physical needs now and in the future, a parent's parental abilities, stability of the home, and a parent's acts or omissions pertinent to determining whether the parent-child relationship is improper. *See Holley*, 554 S.W.2d at 371–72; TEX. FAM. CODE § 263.307(b)(8) (reviewing history of substance abuse by family/others with access to home in best-interest determination). "A parent's illegal drug use supports a finding that termination of the parent-child

---

[5] It is unclear from R.R.'s testimony whether he was referring to past or current use of methamphetamine. As explained below, however, the trial court could have reasonably inferred R.R. was still using based on his failure to appear for drug testing.

relationship is in the best interest of the child." *In re A.M.O.*, No. 04-17-00798-CV, 2018 WL 2222207, at *2 (Tex. App.—San Antonio, May 16, 2018, no pet.) (mem. op). "The factfinder can give 'great weight' to the 'significant factor' of drug-related conduct." *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). This is because "drug use can destabilize the home and expose children to physical and emotional harm if not resolved." *In re A.L.S.*, 660 S.W.3d 257, 275–76 (Tex. App.—San Antonio 2022, pet denied).

R.R. testified that on March 15, 2023, he submitted to a hair follicle test for the Department and tested positive for methamphetamine and cocaine at that time.[6] He further testified that the Department tried to send him for drug tests at other times during this case, but he did not appear for those tests. Henry confirmed the March 15 drug test was the only one R.R. submitted to out of "at least eight times in total" that the Department asked him to appear for testing during this case. The Department presented several text messages Henry sent R.R. asking him to submit to drug tests.

Like illegal drug use, failure to submit to drug testing—through which the trial court could infer continued drug abuse—is relevant to multiple best-interest considerations. *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op); *see In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *7 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) ("The trial court could have reasonably inferred that the father was still using methamphetamine, or some other illegal drug, based on his failure to take court-ordered drug tests."); *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (concluding factfinder could reasonably infer parent's failure to submit to court-

---

[6] While R.R. admitted his use of methamphetamine, he testified that he did not use cocaine. Jaworski testified, however, that a positive cocaine test indicates the presence of a metabolite called benzoylecgonine and that "only cocaine metabolizes to benzoylecgonine." The trial court was permitted to credit Jaworski's testimony over R.R.'s. *See In re J.O.A.*, 283 S.W.3d at 346.

ordered testing indicated parent avoided testing in an effort to conceal continued drug use). Based on R.R.'s admitted drug use and his failure to submit to drug testing, the trial court could have reasonably credited Henry's testimony that she did not believe R.R. had addressed his substance abuse issues. *See In re R.L.M.*, No. 04-18-00136-CV, 2018 WL 2943651, at *3 (Tex. App.—San Antonio June 13, 2018, pet. denied) (mem. op.).

Additionally, the trial court found—and R.R. has not disputed on appeal—that R.R. failed to comply with his service plan. In determining a child's best interest, the trial court is permitted to consider whether a parent complied with a service plan. *See In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) ("Non-compliance with a service plan is probative of a child's best interest."). Here, Henry testified that R.R. presented a certificate showing that he completed his required parenting classes, but he did not successfully complete the group counseling portion of the drug treatment recommendation as outlined in his substance abuse assessment. The trial court could have reasonably inferred that R.R. lacked parental abilities, including the motivation to seek out and use available resources, based on his lack of engagement and failure to commit to the service plan. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.— Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE § 263.307(b)(10) (reviewing willingness/ability of child's family to seek out/accept/complete counseling services and to cooperate with/facilitate an appropriate agency's close supervision as part of best-interest determination); TEX. FAM. CODE § 263.307(b)(11) (reviewing willingness/ability of child's family to effect positive environmental/personal changes in a reasonable time to decide child's best interest); TEX. FAM. CODE § 263.307(b)(12)

(determining whether the child's family demonstrates adequate parenting skills as part of best-interest evaluation).

A parent's failure to provide proof of employment is also relevant to a best-interest review. *See In re T.R.*, 491 S.W.3d 847, 856 (Tex. App.—San Antonio 2016, no pet.). Here, R.R. testified that he was self-employed as a remodeler, but Henry testified that he never reported his self-employment or any other employment to her. She also testified that R.R. never provided her with any proof of income. *See In re T.M.*, No. 01-16-00942-CV, 2017 WL 1885406, at *11 (Tex. App.—Houston [1st Dist.] May 9, 2017, pet. denied) (mem. op.). While Henry agreed R.R. would not have pay stubs to submit if he was self-employed, she testified that he could have presented alternative proof of income, such as "screen shots of any kind of payment coming in," but did not do so.

"Evidence of a parent's unstable lifestyle also can support a factfinder's conclusion that termination of parental rights is in the child's best interest. Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs." *In re S.R.*, 452 S.W.3d 351, 367 (Tex. App.—Houston [14th Dist.] 2014, pet. denied.) (internal citation omitted). R.R. testified that he was arrested approximately a month before the trial in this case, and Henry testified that he told her he was arrested for driving a stolen vehicle. Additionally, the evidence showed that in 2021 and 2022, R.R. was required to submit to drug tests because he was on parole for an unidentified offense. *See In re X.J.L.*, No. 04-17-00466-CV, 2017 WL 4655102, at *3 (Tex. App.—San Antonio Oct. 18, 2017, no pet.) (mem. op.) ("Father's inability to maintain a lifestyle free of criminal conduct subjects [the child] to instability and endangers the child's well-being."). Henry testified that she did not visit or assess R.R.'s home during this case—according to Henry, "[h]is criminal history and his refusal to drug test is a danger. We would need him to at least be testing clean before we go do a visit."

N.L.R., who turned one shortly before trial, had been in the same foster home for six months. Henry testified the home was a foster-to-adopt home that was willing to be a long-term placement for her. She explained N.L.R. was "very comfortable with" her foster family and "responds really well to" them. She also testified that the foster family was "very protective of [N.L.R.]. They're very structured with her and they're very nurturing." She believed N.L.R. was "very well taken care of" in the home. *See* TEX. FAM. CODE § 263.307(a).

The evidence presented at trial showed that R.R. attended most of his scheduled visits with N.L.R., and Henry did not express any concerns about those visits. Henry also agreed that R.R. had completed his parenting classes. Henry added, however, that R.R. was never able to progress toward additional or unsupervised visits with N.L.R. due to his "lack of progress on the service plan and refusal to drug test and a positive drug test." She also testified that while he had finished the parenting classes, he was not "demonstrating parenting" because "[h]e's engaging in criminal activity and he's not [drug] testing for [t]he Department."

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of R.R.'s parental rights was in N.L.R.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule R.R.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice